# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff/Respondent,**

**v.**                               **Case No. 01-20122-JWL**
                                                     **06-3262-JWL**

**Marcus Quinn,**

        **Defendant/Petitioner.**

## MEMORANDUM & ORDER

On September 13, 2006, the court entered an order directing the clerk of the court to file certain correspondence received from Mr. Quinn as a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 44).  In that motion, Mr. Quinn asserts that he received ineffective assistance of counsel during his supervised release revocation proceeding.  On January 9, 2007, the court held an evidentiary hearing on Mr. Quinn's claims and Mr. Quinn was represented by counsel at the hearing.  At the conclusion of the evidence and argument by counsel, the court retained Mr. Quinn's motion under advisement pending supplemental briefing on one claim raised by Mr. Quinn at the evidentiary hearing.  That briefing is now complete and the court is prepared to rule on all claims asserted by Mr. Quinn.  As will be explained, Mr. Quinn's motion is denied in its entirety.

*Facts*

On September 19, 2001, Mr. Quinn was charged in a one-count indictment with distribution of cocaine base (crack). In January 2002, Mr. Quinn entered a plea of guilty to the charge and, on April 29, 2002, Mr. Quinn was sentenced to a 46-month term of imprisonment followed by 3 years of supervised release. Mr. Quinn's supervision began on May 20, 2005. In April 2006, Mr. Quinn tested positive for marijuana on two occasions during drug testing. He also failed to report for urinalysis on one occasion in April 2006. On May 2, 2006, Mr. Quinn was arrested during a search of a residence located in Kansas City, Kansas. Mr. Quinn neither owned nor lived at the residence and no drugs or paraphernalia were discovered during the search. While he was in custody, Mr. Quinn advised officers that he had sold crack cocaine out of the residence during the months of January, March and April 2006.

On May 4, 2006, Mr. Quinn was charged with two Grade C violations of his supervised release (one for his positive drug tests and one for missing a scheduled drug test) and one Grade A violation (selling crack cocaine). Mr. Quinn, who was represented by an Assistant Federal Public Defender (AFPD), ultimately admitted all three violations and received a sentence of 18 months' imprisonment and an additional three years of supervised release. In his § 2255 motion, Mr. Quinn asserts that he received ineffective assistance of counsel during his supervised release revocation proceeding in connection with the Grade A violation. Mr. Quinn advances two primary ineffective assistance claims–that he was advised by counsel to admit the violation despite his statements to counsel that he had lied to officers (and, thus, did not in fact sell crack cocaine) in an effort to protect other individuals who may have been involved in drug trafficking

2

and that his counsel failed to move to suppress the statements made by Mr. Quinn to officers concerning the sale of crack cocaine.  Mr. Quinn does not contest the Grade C violations or challenge his admission of those violations in his motion.

*Counsel's Advising Mr. Quinn to Admit the Grade A Violation*

In support of his motion, Mr. Quinn asserts that the AFPD advised him to admit the Grade A violation despite his consistent statements to her that he had lied to officers about selling crack cocaine in an effort to protect other individuals.  In his motion, Mr. Quinn asserts that his counsel essentially advised him to perjure himself in order to receive a more favorable sentence. At the evidentiary hearing, the AFPD conceded that Mr. Quinn consistently indicated to her that he had lied to the police about selling crack cocaine.  According to her, she advised Mr. Quinn "that going into court and telling the court that you lied to the police when you made your statement to them was not a very good tactic and that obviously he should tell the truth but that I thought a better way to proceed was to admit the violation since he had made a statement to the police and the police would no doubt testify that he had made that statement, and that I believed it would be better to admit and try to work out some kind of agreed-upon sentence."  When asked whether her advice was the equivalent of advising Mr. Quinn to perjure himself, the AFPD explained:

> I always told him that he should tell the truth.  It was his decision.  And as a
> defense attorney we don't always know always about what our client is telling us
> and I always tell them they should make the choice–that they should tell the truth
> but I tell them what I think the best strategy is if it's the truth.

3

On cross-examination, the AFPD reiterated that she advised Mr. Quinn that admitting the Grade A violation would offer the most favorable sentence "assuming he wasn't perjuring himself" and that she expressly advised him not to perjure himself. The court found credible the AFPD's testimony concerning the nature of the advice she provided to Mr. Quinn.

A defendant making an ineffective-assistance-of-counsel claim must show both that counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Review of counsel's performance under the first prong of the *Strickland* test is highly deferential. *Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. (quoting *Strickland*, 466 U.S. at 690). To be deficient, "the performance must be 'outside the wide range of professionally competent assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 690). Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Id*. (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir.1999)). In essence, Mr. Quinn must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sallahdin v. Mullin*, 380 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Strickland*, 466 U.S. at 687).

The court concludes that Mr. Quinn has not met his "heavy burden" of showing that his counsel's conduct fell below the standard of a reasonably competent attorney. *See Bullock v.*

*Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002).  Significantly, Mr. Quinn's counsel never told him to lie to the court and, indeed, always emphasized the need to tell the truth.  Because the AFPD never asked him expressly whether he was guilty or innocent of the Grade A violation (she testified that she did not know whether Mr. Quinn had perjured himself when he admitted the Grade A violation), her advice appears geared toward encouraging Mr. Quinn to reconsider, if appropriate, his statement that he had lied to the police to the extent he believed that that approach would benefit him.  In other words, the AFPD, perhaps too subtly for Mr. Quinn to process, was advising Mr. Quinn to tell the truth and admonishing him that if he was lying to her about lying to the police, the outcome, contrary to what Mr. Quinn might believe, would be more favorable to Mr. Quinn if he simply told the truth and admitted to the violation.  In such circumstances, the court cannot conclude that Mr. Quinn's counsel was "completely unreasonable" and that her advice fell outside the wide range of professionally competent assistance.

*Counsel's Failure to Move to Suppress Statements*

At the evidentiary hearing, Mr. Quinn asserted that he received ineffective assistance from the AFPD because she failed to move to suppress the statements made by Mr. Quinn while in custody on the grounds that Mr. Quinn's arrest was not supported by a warrant or probable cause and, thus, was in violation of the Fourth Amendment.  Under the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Quinn must prove that "counsel's representation fell below an objective standard of reasonableness" and that "any

5

deficiencies in counsel's performance [were] prejudicial to the defense." *Id*. at 688, 692.  As will be explained, the court concludes that it was reasonable for the AFPD to decline to file a motion to suppress and, in any event, the court would have denied the motion with the result that Mr. Quinn can show no prejudice in his counsel's failure to file the motion.

The briefing submitted by both parties recognizes that the threshold issue presented by this claim is whether the exclusionary rule applies to supervised release revocation proceedings. Significantly, every Circuit Court of Appeals that has addressed this issue has held, with minor exceptions not applicable to the facts presented here, that the exclusionary rule does not apply to supervised release revocation proceedings. *See  United States v. Herbert*, 201 F.3d 1103, 1104 (9th Cir. 2000) (exclusionary rule not applicable in proceeding to revoke supervised release); *United States v. Armstrong*, 187 F.3d 392, 393 (4th Cir. 1999) (same);[1] *United States v. Montez*, 952 F.2d 854, 857-59 (5th Cir.1992) (absent a showing of harassment by police, the exclusionary rule does not apply to revocation of supervised release hearings); *accord United States v. Archambeau*, 1998 WL 637015, at *1 (8th Cir. Sept. 14, 1998) (rejecting suggestion that district court was precluded from considering evidence flowing from constitutional violations in determining whether to revoke supervised release) (citing *Montez*, 952 F.3d at 857-58); *United States v. Alexander*, 1997 WL 592807, at *1 (6th Cir. Sept. 24, 1997) (exclusionary

----

[1]In his papers, Mr. Quinn relies on two unpublished Fourth Circuit cases suggesting that the Fourth Circuit applies the exclusionary rule to supervised release revocation proceedings.  Those unpublished decisions, *United States v. Muse*,1998 WL 726750 (4th Cir. Oct. 16, 1998) and *United States v. Mitchell*, 1994 WL 717605 (4th Cir. Dec. 29, 1994), have both been superseded by the Fourth Circuit's published decision in *Armstrong*, which expressly holds that the rule does not apply in such proceedings.

rule does not apply in supervised release revocation proceedings); *United States v. Gratta*, 1996 WL 532655, at *2 n.** (2d Cir. Sept. 19, 1996) (acknowledging holding in *United States v. Rae*, 678 F.2d 382, 388-90 (2d Cir. 1982), in which Circuit held that exclusionary rule applies to revocation proceedings if the person conducting the search knows of the defendant's probationary or supervised status, and further acknowledging that Second Circuit is the only Circuit to so hold).

While the Tenth Circuit has not specifically addressed whether the exclusionary rule applies to supervised release revocation proceedings, the Circuit has held that the rule does not apply to parole or probation revocation hearings. *See United States v. Finney*, 897 F.2d 1047 (10th Cir. 1990). Joining the majority of Circuit Courts, the Tenth Circuit underscored that "application of the exclusionary rule to revocation proceedings will not achieve the deterrent effect behind the rule." *Id.* at 1048 ("[A]pplication of the exclusionary rule at this stage would not achieve a deterrence as much as it would inhibit the interests of the public in the pursuit of its protection against 'convicted criminals who have abused the liberty afforded them.'"). The court believes that the Circuit, if faced with the issue, would extend its holding in *Finney* to encompass supervised release revocation proceedings. Indeed, other Circuits have relied on *Finney* to support the conclusion that the rule is not applicable in supervised release revocation proceedings. *See Montez*, 952 F.2d at 858 (reasoning set forth in *Finney* as to probation revocation hearings is equally applicable to supervised release revocation hearings); *Alexander*, 1997 WL 592807, at *1 (citing *Finney* in support of conclusion that rule does not apply in context of supervised release revocation).

As these and other cases have recognized, the context of supervised release revocation is indistinguishable from parole or probation revocation for purposes of determining whether to apply the exclusionary rule. *See Armstrong*, 187 F.3d at 394 (costs and benefits of applying the exclusionary rule to revocation proceedings are almost identical in the parole and supervised release contexts); *United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994) (Congress considers probation revocation and supervised release revocation to be so analogous as to be interchangeable and noting that courts treat revocations the same whether they involve probation, parole, or supervised release). Moreover, since the Circuit decided *Finney*, the Supreme Court has held, in the context of state parole revocation proceedings, that the exclusionary rule does not apply and, in doing so, expressed a great reluctance to extend the exclusionary rule beyond the criminal trial context. *See Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357 (1998). Both the Ninth Circuit and the Fourth Circuit–the only Circuits to have addressed the issue since *Scott*–have held that *Scott* compels the conclusion that the exclusionary rule is not applicable to supervised release revocation proceedings. *See Herbert*, 201 F.3d at 1104 ("[T]he Court's reasoning in *Scott* applies equally to suppression of evidence in federal supervised release proceedings."); *Armstrong*, 187 F.3d at 394 ("*Scott* requires that the exclusionary rule not be extended to federal supervised release revocation proceedings."). For the foregoing reasons, then, the court believes that the Tenth Circuit would extend its holding in *Finney* to the context of supervised release revocation proceedings and would conclude that the exclusionary rule does not apply in those proceedings.

In light of the above, the court concludes that it was reasonable for the AFPD to decline

to file a motion to suppress Mr. Quinn's statements.  In any event, Mr. Quinn is not able to show prejudice because this court would have denied any motion to suppress filed on behalf of Mr. Quinn based on its belief that the Tenth Circuit would conclude that the exclusionary rule does not apply to supervised release revocation proceedings.  For these reasons, Mr. Quinn's claim that his counsel was ineffective for failing to file a motion to suppress is denied.

*Remaining Claims*

Mr. Quinn raises three other claims in his motion, all of which the court denies.  Mr. Quinn essentially contends that the AFPD "guaranteed" Mr. Quinn that he would receive a sentence of one year and one day; that she failed to inform Mr. Quinn about the maximum sentence he could receive if he admitted to the violations; and that she failed to provide him notice of his sentencing date.  At the evidentiary hearing, the AFPD testified as to each of these claims.  The court found her testimony highly credible and, in the absence of any contrary evidence presented on behalf of Mr. Quinn, is persuaded by that testimony that Mr. Quinn's claims lack merit.

The AFPD testified that she very clearly remembered having a conversation with Mr. Quinn about a sentence of one year and one day because that was the specific sentence that Mr. Quinn desired and he advised her that he wanted that sentence with no supervision to follow. According to the AFPD, she advised him that she thought "that was in no way a possibility" and that it "was never going to happen in [her] view"  (particularly as it was highly unusual to

9

receive both a lower sentence and no supervision). She further testified that she never guarantees any defendant the sentence that he or she will receive. With respect to Mr. Quinn's claim that she did not advise him of the ramifications of his admissions to the violations, the AFPD testified that she discussed with Mr. Quinn the statutory requirements for a supervised release violation and discussed the violation report which contained the guideline recommendations in it. Finally, with respect to the issue of whether she provided notice to Mr. Quinn of his sentencing date, the AFPD produced a copy of a letter from her office to Mr. Quinn, dated August 3, 2006, which expressly notified Mr. Quinn that his final revocation hearing was set for August 21, 2006 at 1:30pm. The AFPD further testified that she had two phone conversations with Mr. Quinn to discuss the upcoming hearing.

The court concludes that the events and circumstances described by the AFPD occurred as she testified they did. The court, then, denies Mr. Quinn's remaining claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Quinn's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 44) is denied.

**IT IS SO ORDERED** this 6th day of February, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

10